With what I thought would be the most difficult case today, but I don't know, given everything that we've heard so far. And that is Deasencio v. Tyson Foods. We'll let Hansel get settled at the table. This is really interesting. Deasencio v. Tyson Foods   Deasencio v. Tyson Foods Good afternoon, your honors. I'd like to reserve two minutes for rebuttal. Yeah, that's granted. Because the issue came up before. But that means the amicus doesn't get rebuttal. You're the Secretary of Labor, but you get the rebuttal. Frederick Sancho, your honor, representing the class of slaughterhouse workers at the Chicken Slaughterhouse and Processing Facility in Lancaster County, Pennsylvania. This case was tried to a jury last June. The primary issue then and now is what constitutes work under the Fair Labor Standards Act. And specifically for this case, whether the district court gave wrong jury instructions when it told the jury, among other things, and I'll read from the instruction. If the donning and doffing and washing at issue do not require physical or mental exertion, the activities are not work. And the court went further and explained what it meant. Quote, therefore, you may ask yourself, is the clothing heavy or cumbersome? Or is it lightweight and easy to put on or take off? Does an employee need to concentrate to wash their hands or gloves or put on or off or take off these clothes? Can an employee put on or take off their clothes and wash their hands or gloves while walking, talking, or doing other things? You may be surprised to know that we read it very carefully and we know that that is the instruction at issue. Your honor, I agree. But just by saying it shows the absurdity of what will happen if this court endorses that instruction today. The court was plainly wrong there for many reasons. It is a saying that in this day and age, if an employer hires a worker to do something, that's not cumbersome. That may not be difficult. There's something that they can do while they're walking or talking. The employer has no obligation to pay the worker for doing that activity. Let me ask you a question. If the court, if this court directed that the heavy or, the quote, heavy or burdensome, quote, language be omitted from the charge, would the charge satisfy you? No. The word exertion should be removed from this charge as well. But that goes a long way in removing those factors, I assure you. But the word exertion in this charge is misleading to the jury and it's confusing to the jury, especially in this day and age. If you look at Tennessee Coal, which is where that language came from, immediately after the word exertion, the Supreme Court of the United States inserted in a parenthetical, burdensome or not. They are completely qualifying the word exertion in this sense. Do not look at exertion as if you have to measure the difficulty or the cumbersomeness of what the activity is. How about the physical or mental exertion? That's correct, Your Honor. Yeah, okay. It would be the proper way to instruct the jury if you want to include something similar to this to simply say any activity or any thought which an employer requires you to do. But the word exertion has developed this connotation that something has to be difficult or cumbersome in order for an employer to have to pay the worker to do it. And that's even when the employer hires the worker to do it. In this case, there's no dispute that the employer requires the workers to put on smocks before they go to the production lines. There's no dispute that they are required to put that smock on, on the plant, on the employer's premises. Could they wear the smock at home? They are not allowed to wear it at home. And no, they do not. For sanitary reasons? For sanitary reasons, Your Honor. There are extensive United States Department of Agriculture regulations which specifically state that you have to wear that smock in the plant. You have to get it in the plant. It has to be clean. In order to comply with those regulations, Tyson requires its workers to pick them up at the plant and to turn them in at the plant so they can be washed before the next day. Isn't there also an issue with the gloves? There's also gloves. Are they Tyson's? Do they have to stay at the plant? They as well. Everything that these workers put on that were at issue in this case, and I'll list some of them, earplugs, hairnets, an apron, which goes on top of your smock, the gloves, which are, there are cloth gloves that go on the hand, and then there are latex gloves which go on top of cloth gloves. Everything that they put on in those items must be obtained at the plant. You can only put them on and take them off at the plant. The problem in this case with the way Tyson runs his plant is this takes time. There are hundreds of people we have here. I think it said six to something, six to ten minutes I thought was the evidence. Your Honor, there's conflicting evidence on this. But it's a minimum of six minutes. It's a minimum of, I submit the evidence was 25 from our perspective. Now Tyson has put on evidence at the trial that it would be six to ten minutes. That's what I remember. So that's the minimum. That's their position. That's their position. The evidence that we put on in terms of an expert witness who measured only, and this is important, he measured only the time that the workers took to perform the specific activities, not the time after they performed the activities when they had to walk to the production line or get in line to wash their hands. Well, that comes under the Portal Act, doesn't it? It's a walking issue. Under the Continuous Workday Doctrine, once the workday starts... The principal activity. Any activity of work, Your Honor, yes, and the principal activity. The principal activity is necessarily a work activity. But if you want to look at it from the Portal to Portal Act perspective, once the work starts, the clock starts. Is this handled in most contracts, in most cases, in the union, in the collective bargaining agreement? Sometimes they do handle it in collective bargaining agreements. This plant has no union. It's non-unionized. Tyson has opposed it. The union is planned, and there is no union. Is this the same protective gear that was involved in IBP v. Alvarez? In the... Okay, IBP v. Alvarez, there were... In the Supreme Court, there were two cases. One was Tumby, Barber, and not in Alvarez. They were companions. In the Alvarez portion of that case, some of it is the same. There was a smock, and there was... The issue there was the walking time between putting the stuff on and getting to the line. That was one of the issues, yes. But it was taken for granted in those cases that putting the stuff on was included as part of the wording. It was found in the lower courts that it was, yes. So that that issue was not necessary to decide by the Supreme Court, but there was no question that the donning was already covered. In those cases, it was then the walking to the line, the issue was that covered. Is that correct? That was the primary issue, Your Honor. And does doffing necessarily follow from donning? If the donning is covered, is the doffing also covered? Yes. Your Honor, yes. The answer is yes. You know, Counselor, as I read the briefs and I spent a lot of time on this case, with all due respect to the Council and Department of Labor I think this court is getting like a moot court problem instead of the entire picture. To me, it's with great difficulty that I can ignore the language of Steiner and the language of Alvarez. They didn't talk about what is the meaning of work. They didn't talk about that. That's what our contest here is. They said the test under the whether they're compensable under the portal of portal provisions of the Fair Labor Standards Act. If those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not excluded by the portal act, so that comes in within this. Thus, it seems to me that following Steiner, we don't get involved in a semantic question of what is work. Steiner said, activities such as donning and doffing of specialized protective gear are compensable if they are integral and indispensable to the principal activity and issue. It seems to me that should control this case. I'd like your comment on that. I believe that the definition of work is a threshold issue before you get to the portal act. Here's why. Why? Why is it a threshold? Why can't we simply say you are putting on or you're taking off protective equipment? As the court discussed in Steiner, as the court discussed in the last Supreme Court case on this, Justice Stevens said, the donning and doffing of specialized protective gear, you don't talk about work at all. You're just saying, are they, is putting them on and taking them off integral and indispensable to the principal activity and issue? Now, why do we have to get into a somatic question of what is work? And when this has been defined, to be sure, to show that these are not hijacked by the portal of portal act. I like your comment. Yes, my comment is that the portal of portal act has been interpreted by the Supreme Court and the Department of Labor to not have changed the definition of work as stated prior to the portal of portal act. Now, as a result of that interpretation, courts, and I believe the United States Supreme Court as well, and Alvarez, repeated that point. And theoretically, you may be absolutely correct had you been the justice writing that opinion to just come out and say that. I believe that that's essentially what happens here. If the work is integral and indispensable and required by the employer, it is work. We don't need to get into the semantics, as you said. But unfortunately, I must acknowledge that courts and the Supreme Court has said that the portal of portal act did not change this question of what is work. And there is a good reason why it serves a purpose in this sense. The definition of work is a gatekeeper to this statute. You only get paid for work. You only get paid for work. But you don't even get past go if it's not work. That's why this case is so important. If that's the law, and if this court issues a rule that says in order to be work, in order to even file a claim, in order to go to your boss and ask to be paid for any kind of negotiating position, in order for any of that to happen, it has to be work. The Fair Labor Standards Act is expressly intended not to read that definition in a narrow or grudging manner. And that's the Supreme Court. Mr. Santorini, let me ask you a question that doesn't technically arise in this case, but will help us understand. You were asked at the inception of the argument do they have to leave the smocks home? No, at work. At work, yeah. Would it make a difference? You know, this case has reached the national press. And there have been discussions of other cases. If you could walk, go home with the smock, would it make a difference? It would, Your Honor. It would, why? No, no, no, I'm sorry. It would not here. No, I'm sorry. Because the question comes up with policemen who come to work wearing their... I guess they do. You were talking about that in chambers. The Philadelphia police are unhappy, I gather, about it. They want their doffing and donning to be covered, but their collective bargaining agreement, I gather, is not covered. Yes. You don't have to get into that. But here, the fact remains that it definitely, the poultry workers, have to get them from the... I thought there was something in the record that indicated that not everybody put on all this equipment. Isn't that true? Yes. There are certain things that are required of everybody uniformly. And that's stipulated in this case, in the dual pretrial memo. And those are the smock, the hairnet, and the earplugs. Those are all required uniformly. With some minor exceptions. But as a general matter, most... And this is stipulated too. Most employees, most of these workers, put on all the other items as well. And now, you haven't referred to, and I imagine... Well, we'll ask them. They'll refer to the fact that some people were paid for the extra time. That's correct. That's what they allege. Unfortunately, because we never got past Go! in this case with the jury in the question of work. The jury never even reached that question. We have serious concerns with the instructions that were given on that point. And we do ask you... I'm optimistic if we do get a remand on this case. I'd like to try the case only once more. And we would ask that the court consider these other instructions. And I do have a case where that was done. I will give you the site, since I did not cite it in my brief. Oh, no. But it was a case authored by Judge Nygaard. And it was Douglas v. Owens. When he was sitting with the Third Circuit? With the Third Circuit. What's the site? Get that now, Your Honor. Okay. Why don't you give it to us on rebuttal? Okay. And just quickly, on that case, the court reversed the judgment because of the evidentiary ruling and said, while we're reversing for the evidentiary ruling, we understand it's likely that these instructions will be at issue in the next trial. Therefore, we're going to address them and give the trial court guidance. Yes, sometimes we do that and sometimes we don't. It's a different experience. I see my time is up. Yes, thank you. We'll hear from the Secretary of Labor's representative. May it please the Court. My name is Joanna Hull. On behalf of the Secretary of Labor is Amicus Curon. Over 60 years ago, the Supreme Court said in Tennessee Coal that work includes a broad definition which includes physical or mental exertion, whether burdens or not, that is controlled or required by the employer and for the employer's benefit. The Court quickly clarified that that was not meant as a limitation on the act in Armor and held that, even something that involves no exertion could be work under the act. Very recently, the Supreme Court affirmed this precedent in Alvarez and said that it has clarified exertion is not necessary for something to be work. Thus, the main question you should ask is whether an activity is controlled or required by the employer and for the employer's benefit. The touchstone is not exertion. Even something performed purely for personal reasons, such as a bike ride, might involve exertion but is not work under the Fair Labor Standards Act. Well, we go back to 1946 in the Anderson case. They said turning on the lights is work. That's exactly correct. In 1946, the Supreme Court said something as simple as flipping a light switch is work. That definition has not changed. The Supreme Court made clear... Why can't we... Why can't the Department of Labor... Because on the one hand, they're talking about this test excluded from the Fair Labor... from the Port of Appointments. Why wouldn't the test, instead of fooling around on what is work, this test of... Is doffing and donning protective gear, as here, that they are compensable if they are integral and indispensable to the principal activity? Why can't the Department of Labor concentrate on that? It came out in Steiner, then it came out in Alvarez. The reason we can't concentrate on that in this case is because the jury foundered on this improper instruction that focused on exertion as the touchstone. Well, I'm sorry. Why wasn't the jury instructed on this principle, this legal precept? The jury actually never... Excuse me. Was this even brought up by counsel at trial? Counsel was seeking instructions on other issues, including this Portal Act question, which is generally the second step in a case such as this, a donning and doffing case. Usually, you have to look at, are the activities work? Because that's a threshold inquiry under the FLSA. As Judge Slaver noted, you can only get paid for activities that are work. But we believe that over 60 years ago, the court made very clear that clothes changing can be work in Mount Clemens and in Steiner. So it does seem a little bit silly to be talking now about, is this work? We believe that Tyson is trying to avoid the import of the recent Alvarez decision by relying on this Tenth Circuit decision of Reich that's clearly incorrect. But wasn't the doffing and donning in Alvarez conceded as work before they even got to the next issue? Yes, and the Ninth Circuit had actually specifically held that it was work, and that work is a definitionally incorporative... So the Supreme Court didn't actually have to address that. But they're holding that the walking time that occurs after the donning and doffing, you can't argue that after that, the donning and doffing itself is not work, because then it makes no sense. What was the Supreme Court doing? The Supreme Court would not have found that walking time compensable if they could have said the donning and doffing itself isn't even work. You started by saying that the threshold, the first inquiry would be work, and that, in this case, And then you started to say, and the second is... And you didn't get to finish that sentence. And it's a very important point that I would like to explain. The second inquiry is, is the activity that is otherwise work excluded from compensable time under the Portal Act? Now, in response to Mount Clemens, the Congress passed the Portal Act excluding from compensable time certain preliminary and post-preliminary activities. But the Court has made clear that that did not change the definition of work. So, the question is... Would they be work if they come afterwards? And I'm having a problem with the language. Go ahead. Let me try and explain it through an example. In Mount Clemens, the Court held that clocking it at a time clock and walking from that time clock to the place of the principal activities was work. Congress disagreed with that and wanted to say we should not make an employer compensate people for that. But Mount Clemens is holding that such an activity that's controlled or required by the employer on the employer's premises is work, survives. But the Portal Act says employers don't have to pay for that. So, for example, clocking it on a time clock and walking is work. But the Portal Act says it's not compensable. So, there are different inquiries. So, if you're done, and then, when do you push the time clock at the Tyson plant? The Department's position is that the moment the employee grabs the smock or the first piece of required equipment, that begins the continuous work day under the Portal Act. Even though you may clock in afterwards? Right. Tyson has to pay from when the employee obtains the smock. Even though the employee then, I don't know how the Tyson plan is laid out, even though the employee now dressed in the smock would have to walk to the place where you clock in? No. Once the employee has picked up the smock and begun their first principal activity, everything that happens after that is compensable as part of the continuous work day. And that was what Alvarez explained. Unless the employee is completely relieved of duty during a meal break. Is it irrelevant where the time clock... Would somebody please turn off that cell phone? And please do. I'm not supposed to be... For a long time, we wouldn't let people bring cell phones in. Now we do. But they have to be turned off. I'm sorry. Should they be confiscated if they're not turned off? Well, you can take care of that. Does where you clock in, relevant at all? To the question of whether something's work or to the question of whether it's compensable? Both. I mean, to the question of whether something is work, no. And that's the only question that we're really focused on here because that's where the jury went wrong. If an employee is required to clock in by the employer, then that is work. And Mount Clemens so held. But it may not be compensable because it might be a preliminary or post-preliminary activity. So that's when you're at the second step. And at that point, you do look at what is the first principal activity. And that gets to judge all desserts question about something being integral and indispensable. Now, if you determine that something is a principal activity, that encompasses the holding that something is work. And that's why Steiner supports our position here. The Supreme Court has held that donning and docking clothing is a principal activity. Now, the FLSA only allows compensation for work. So if it's also compensable under the Portal Act, it is work. So these principles have been established a long time ago. I mean, in addition to the idea that there's a second step of Portal Act questions that may make something that's work not compensable, there's also a third step in these donning and docking cases, which is the de minimis doctrine. I was not going to ask you about that. And we see that as a third step, which may relieve an employer of liability for paying for activities that are de minimis. But here, the jury haven't gone that far. They don't think turning a light bulb on lightswitch is de minimis? The department's position is that you have to look at all of the uncompensated time in the aggregate. So you can't just slice little activities into discrete parts and say it's de minimis. My job might involve picking up a pen, writing on paper, and it becomes a brief. If I'm not paid for any of that, aside from the fact that I'm an exempt employee, you can't say that that's de minimis. You have to look at all of the uncompensated time in the aggregate. And we make that very clear in our advisory memorandum. Do we have to get into the de minimis instruction on this appeal? We don't believe you have to get there in this case. Because the court gave an instruction on work that was clearly wrong, the jury never got past that question. So basically, as far as we see it, that's what the court should remand for a proper instruction. Are there any issues of material action? I mean, are there any factual issues that the jury really needs to decide? I believe we cited in our footnote that Tyson apparently disputes whether all of the items were required. And I think that they also dispute whether they were controlled or for the employer's benefit. But we think that clearly, and this is our position that we've set out in the WAM, that close changing done on the employer's premise as required by the employer is work. That's the limited issue before us. Mr. Santorelli says, and you disagree, well, why don't we give further information or instruction to the district court so that he doesn't have to try the case a certain time? You don't agree with that? No, I mean, if the court feels that that's appropriate to do, then the department certainly wouldn't disagree with that. Well, then let me ask you, do you think the instruction on a continuous workday and the instruction on de minimis were erroneous? I think the instruction on a continuous workday went awry by conflating this idea of what is work as a threshold inquiry with the principal activity inquiry that you actually need to look at under the Portal Act. Proper instruction would say, probably in this case, that these activities are work as a matter of law, but the employer may not have to compensate for them if they're preliminary and post-preliminary. And then you look at, is the donning and doffing principal activity, is it integral and indispensable to the activities that the employees were hired for? And when the employee begins their first principal activity, that starts the continuous workday. And then on de minimis, you have to look at all the uncompensated time in the aggregate. And you think the court didn't do that in its instruction? I don't believe so, although with the de minimis, I think that Tyson had argued that you look at each activity and they had said picking up a smock takes minimal time and putting on a hairnet takes minimal time. So the time-slicing thing was certainly argued to the jury and they could have easily been confused by it. Okay. Judge Altershirt, do you have any questions? No, I don't. I have no other questions. Thank you very much. Thank you very much. We'll hear from the appellees. Appellee, I guess, in this case. In the appease of court, my name is Michael Mueller. I represent Tyson Foods, which was the defendant below the appellee here. On one theory or another, but often on the work theory, no meat processing employer has ever been required to pay for the kind of lightweight clothing items we're talking about in this case. And I think important to the questions the panel had, these are not the items that were issued in Alvarez. I'm holding in this little bag one example of everything that was admitted at trial. It is worn by some of the employees and they don't even wear all of this, as Mr. Sanarelli conceded in his closing at trial. Most of the employees just wear the smock, hairnet, and earplugs, and many also wear the safety goggles. Yeah, if that's true, then did the district court go awry by asking the jury to consider whether it was burdensome or heavy to put these things on? You're telling us that almost as a matter of law, the district court should have recognized that they weren't burdensome, but that isn't the instruction that was given to the jury. Well, Judge Snowder, first of all, the word burdensome never appeared in the instruction except three times to tell the jury that they could find it was exertion, whether it was burdensome or not. I think Your Honor may be thinking about one word in the instruction, which comes from the Tenth Circuit's Wright case, that said they could consider whether or not it was cumbersome. Cumbersome and burdensome are not the same things. The plaintiffs have offered one dictionary definition equating the two, but it's only one of the definitions in their dictionary and many dictionaries the court can take judicial notice of do not even equate cumbersomeness with burdensomeness. It goes to things like awkwardness or unwieldiness, but not burdensomeness. And the factors that the Tenth Circuit used, which include cumbersomeness, have been adopted by every court in the United States which has ever considered the clothes-changing issue but for four. And those are courts that don't think, this is the Alvarez case in the Ninth Circuit, the Valera's case in the Ninth Circuit, and two district court cases, and they just don't think the exertion requirement still applies anymore. But every other court in the United States that's looked at the work issue has said the exertion test still remains. It was announced by the Supreme Court. Well, but the district court specifically said, therefore you may ask yourself, is the clothing heavy or cumbersome? Or is it lightweight and easy to put on and take off? That's an advent, 2209 to 2211. Now, the district court also said that the district court focused the jury on heavy or cumbersome. And isn't heavy or cumbersome focused? Well, the question is, is the focus on heavy or cumbersome inconsistent with the Supreme Court's decisions that say exertion is not an issue? No, Your Honor, it is not inconsistent. First of all, the Supreme Court has always looked at factors in every one of the work cases. I didn't think you would say otherwise. But there's a good reason for that. And that's when you look at the decisions, you can see that the Supreme Court even used the word burdensome in Alvarez. In fact, it noticed that the Ninth Circuit made a distinction between finding certain items compensable in Alvarez and other items not compensable. And the Supreme Court had a different theory. That was on the de minimis theory. But what's the relevance of whether the clothing is heavy or cumbersome? It goes to whether or not it's an incidental activity. These are activities that normal people think are not compensable, because everybody gets ready for work. In fact, one court pointed out it's like a judge putting on a robe in the morning. And the plaintiffs at trial testified that that's essentially what it was like, taking off their pajamas or putting on their pajamas or taking off their clothes before going to bed. It is incidental. It's an incident to work. It's getting ready for work. It's not the work itself. And that's how all the courts have looked at this issue. Do you mean that as a matter of law, the donning is not to be included? The donning time? Judge Slover, we argued below that it wasn't work as a matter of law. We accept the district court's ruling that that was a factual dispute for the jury. All I'm saying is many courts have concluded it's not work as a matter of law, but we're talking about a jury right here. We're talking about a safety trial. Yes, but the question we have is, was the jury instructed accurately? We believe they were instructed accurately. These factors come up in all the cases. And when you look at Tennessee Coal Footnote 11, it explains the concept of work by quoting from what was then the Webster's dictionary back then. And it notes that incidental activities is kind of the concept of the court was getting at. I think Ms. Howell talked about maybe it was riding a bike she mentioned. There are just some things that may in fact involve exertion, but the test is not whether physically a muscle is moving or a synapse is firing in the brain. Let me, I didn't write this down. You think that the donning was incidental? Is that your... In this case, it is. These people weren't hired to dress. They were hired to process chickens. But they were not allowed to process chickens unless they dressed in the uniform and equipment provided by the employer. Yes, and that varied from person to person. And if they went into the line without putting on that uniform and equipment, they would be removed from the line, would they not? Essentially, yes, Your Honor. And if they tried to wear that equipment and uniform home, they would not be permitted to leave the plant. Is that correct? That's correct, Your Honor. Except for the boots, which they can wear in and out or their sneakers. They can work in their sneakers. But that's true in all the cases that have also found that it's not work as a matter of law. All these cases... Counsel, this is Judge Alderson. Can I jump in here just a... Actually, two questions, and I'd like you to answer yes or no. They're simply... Number one, is donning this equipment or this clothing required by Tyson Foods? Yes or no? No, not for everybody. All right, okay. Now, would you say that putting on these activities and putting on this equipment, is that an integral and indispensable part of the principal activities which they... for the tasks they are to perform? Your Honor, can I make one correction? My last answer and then answer that one. For many of these people, it's not required. Like the cotton gloves, nobody has to wear those. It's optional. But they don't have to wear the smock. Well, some people do not have to wear the smock. Most do. But, like, for example, nobody has to wear a cotton glove. It's in case they don't like the temperature and they want to be warmer. So some of the items we're talking about are not required. But the smock, generally required. Hairnet, generally required. Earplugs. Earplugs are required. But some, not even that. The answer to your question, Judge Alderson, is we do not believe these items are integral and indispensable. But we dropped that defense before trial because the case law... I know you dropped that. And my question is, why did you do that? Because the case law was so clear on the work issue. And I'd like to make a point that responds to... And that's why I say you lawyers here brought a moot court question. You're just asking us to decide one piece of the practices regulated by the Labor Department. But here we have what I think is a very simple test, although we'll use it in another concept, but it does come under the Federal Labor Standards Act. And this is the last decision on this, and it comes from Justice Stevens, when he says that activities such as donning... It would seem to me that activities such as donning and doffing specialized protective gear. Would you say that that's what they are, protective gear? We say some of this is not gear. It's just simple clothing. These are different items that were at issue in Alvarez. The Alvarez items were heavy chain mail worn by rib meat processing employees. Are they, shall we say, because you required, would you say they are indispensable to their activities? No, Your Honor, and several recent cases have projected that. Steiner itself said the test is not just whether something's necessary. It's integral and indispensable. Alvarez reiterated that point. In two recent circuit decisions, Bonilla in the 11th Circuit and Gorman in the 2nd Circuit said, required is not enough to make something compensable. There's lots of things required by employers. The test is integral and indispensable. So the required part, Your Honor, just goes to indispensable. The question is, is it integral? And that's a more complicated inquiry, but one we didn't think the jury needed to decide because the work issue was so clear here. And I do want to... Counsel, you can make a lot of statements, but don't say that the work issue is rather simple. I was suggesting that the jury would find it if properly charged. It seems to me, Counsel, once you people require them to don this gear, that it comes under the test that it's an integral and indispensable part of the principal activities for which the covered workmen are employed. May I respond to that, Your Honor? Certainly, you may respond to that. The statute, when it was passed, talks about work, not integral and indispensable. In fact, the word integral and indispensable is not in the statute. 203G says employee needs to suffer a permit to work. And so, as Ms. Hull did, I think Mr. Sandrelli did, all the courts say the Senate Quanon for the Fair Labor Standards Act decides first whether something is work. And that was established in Tennessee Coal, never been overruled. Now, in Anderson v. Mount Clemens Pottery, they found that a package of activities taking place at Mount Clemens Pottery, taking about 14 minutes in the morning, was work. And Congress reacted very quickly to that and passed the Pearl Act. It is a separate defense. And we took a look at the legislative history to get ready for this oral argument. And I'm sorry, it's not in the record, but it's important. We can take judicial notice of legislative history. Or I would respect an opportunity to maybe submit a few of the passages. It's clear that Congress thought that the Pearl Act defense was just a second defense. That is, they did not assume the Supreme Court had decided that these activities were work as a matter of law. They were just saying, whether or not somebody might conclude it's work, you also have a Pearl Act defense. And the Supreme Court, of course, in Steiner, imposed an integral and indispensable component onto that by looking at the legislative history. But in Steiner, Judge Aldiser, it was just assumed by the parties that it was work. That defense wasn't mitigated. I like, because we're dealing with workmen, we're dealing with something that's very fundamental to their livelihood. Why shouldn't we have such a simple thing? Company, you require this donning, you pay for it. Your Honor, Congress can do that. But what about the language proposed by the Secretary? Controlled and required by the employer and for the employer's benefit. Is that an appropriate standard? No, Your Honor, it's not. And that's because the Supreme Court's already spoken on this area. In Tennessee Coal and, importantly, after Arbogast and Jewel Riggs, they said there's three essential elements to work. And everybody on the appellant's side is ignoring the Jewel Riggs case. It reiterated after Arbogast that there are three essential elements to work. And the Supreme Court quoted that again in Mount Clements Pottery. That remains the test. And the Department of Labor does not have the power to make binding rules under the Fair Labor Standards Act, particularly Section 207. It does in some other parts of the Act, like companionship services and so on. But the Supreme Court has said the Department of Labor has no power here. And this Court has often said the Department of Labor has no power to issue rules with the force of law. So they just can't create a new test. They have to follow the test set down by the Supreme Court. I would like to address the deference point beyond that. We think there's a couple of points to be made about deference. First of all, we don't think you can get to the Chevron or Skidmore deference that the Secretary of Labor is asking for because here all that the Secretary is doing is purporting to recite Supreme Court decisions. I can understand your argument that you don't get to Chevron, but why isn't this a Skidmore case? If it persuades us, then we listen to it. Isn't that Skidmore? Your Honor, because here what they're asking you to do is eliminate an element of a test. They're asking you to eliminate the exertion element from the work test, despite the fact that Supreme Court has repeatedly held on this issue. But exertion is not necessarily rough, moving stuff, straining your muscles. Exertion is the movement, the putting on or the taking off required to do it. And some of the exertion we see in the cases is pretty minimal. If you look at Mount Jewel, other than the question of physical or mental exertion, which there is, as we've been seeing in many of the cases, not a requirement that this be forceful or long or something requiring strength, basically what Mount Jewel is saying is something controlled or required by the employer and necessarily and primarily for the benefit of the employer. Well, Judge Roth, let me start first with what they're trying to do with their wage hour administrative memorandum. They're trying to remove the exertion element altogether. Is exertion in putting on a pair of gloves? In some metaphysical sense, yes, but not in the sense the courts have recognized. Are you going to put your hands out like Harry Potter and the gloves again? The courts have looked at whether it takes a modicum of concentration or physical effort. And so the mere fact that a muscle moves is not the test. And no court has looked at it in that sense. Every court has filed a tense circuit fleet in looking, as a practical matter, whether there is a modicum of effort or involvement. And here we didn't have a judge decide it. We submitted it to a jury who decided that using their common sense. And if you look at the instruction the judge gave to the jury, it almost literally tracks what the Supreme Court said in Alvarez. And what bothered the jury was, quote, exertion. Well, we don't know that. Well, I just want you to know that. We know that they had a question because they may not have remembered that part of the instructions. But when he read it back to them, all he did was read the charge again and read a dictionary definition of exertion. They deliberated a couple more hours. So they could just as easily have found that this case went off on the two factors that Ms. Howe admits were disputed issues at trial, whether it was even required or whether it was for our benefit. I mean, none of these items, like the gloves, don't benefit us in any way. Is there any dispute that is required? That's correct. Is there any dispute that is for the benefit of the employees? That's correct. Both issues were disputed at trial. Well, if it's required by health authorities that they wear this equipment, wear this. But it's not. I mean, that is, the USDA only requires clean outer garments. It doesn't require a smock. And although in some sense we have to minimize the hearing issues by issuing earplugs, that may be the only thing you might be able to say is required. The hairnet, it's not in the regulations. It says head covering. It's just that we've decided as an employer that that is the way we'll meet that requirement. But it's not a government regulation. I'd like to pay you a tax. Counsel, here's what bugs me. That in 1946, the court held that turning on a light switch was work. And 49 years later, the Supreme Court in Alvarez says, referring to past cases, we clarified that exertion was not in fact necessary for an activity that can constitute work under the FLSA. Now, doesn't that sort of wrap it up? No, Your Honor, it does not. In Alvarez, where you were just quoting from, they're citing to armor. But armor is a case for on-call or waiting time. And that was decided eight months after Tennessee coal. The next year, in 1945, in Jewell Reds, the Supreme Court didn't use the armor rule. It used the Tennessee coal test. And that answers the question, because it shows that the removal of the exertion requirement is just for waiting and on-call cases. And that is embedded in the Department of Labor's own regulations. Let me shift you for a little time here to the question of your argument that some workers were compensated for extra minutes. Now, your own witness, Michael Good, testified that workers in receiving, killing, and picking, and evisceration did not receive those extra minutes. And I'm just wondering why the question of compensation for extra minutes goes into the liability phase as distinguished from the damages phase. Yes, Your Honor. This is not an issue like Wheeler v. Hampton Township or Valeras in the Ninth Circuit, where we're trying to take payment of minutes for one activity and shift it over and use it as a credit, a profound liable on something else. When we started offering these minutes at the plant, while we didn't admit the law compelled it, we said we're paying these minutes specifically for going to government. But you didn't pay them to everybody. No, I understand. And so because you didn't pay them to everybody, I don't see why it's – I don't even understand why it comes into the issue that's before us, which is liability. When it comes to – if you were to lose before a jury in a retrial, if a retrial were ordered, then wouldn't it more appropriately be a defense to the compensation for those workers who received the extra compensation? Well, Your Honor, two things. First of all, it doesn't need to be addressed on this appeal because it didn't have anything to do – But you put it in your brief. Well, only because they appealed this issue, so we were responding to it. All we're saying – they're asking you to give an advisory opinion on that if there's a retrial, and we're saying it has nothing to do with the work issue. Second, we're just saying that if we already paid for something, then there can't be a liability issue because we paid for it specifically, calling it Donnie and Doffy minutes. So the point was for 80 percent of the people, it's not even an issue on this appeal. Counsel, let me get back. I really just didn't understand your comment when I cited the last case, the last case of the Supreme Court on this issue. That's right. And it makes the statement that exertion is not necessary for an activity to constitute work. There was no other place in the opinion discussing exertion. Now, why aren't we bound by that decision? Your Honor, I think you're bound by it, but bound to construe it for what it means. It's in the background decision of the case. Well, okay. But if I may answer, it cites our – and then in the parenthetical, it says, if an employer chooses to hire a man to do nothing. And that's the waiting time cases, and here there was a waiting time claim. And by the way, there was also, Your Honor, a waiting time claim in Alvarez. And so that's part three of the Supreme Court's decision. And so it – Again, Counsel, you misunderstood me, and maybe I'm wrong, but I'm still able to read. Did the court in Alvarez discuss exertion other than the part that I read to you? No. It's only in those two sentences quoting the two cases, and we submit they're both still good law. Tennessee Cole and his progeny for activity cases and Armour for waiting time cases. Thank you. I see your red light is on. Thank you. Excuse me. Before you go, Judge Walsh, do you have any questions? No, I don't. Judge Olsen, do you have any more questions? Oh, no. I have no questions. More questions. This is – Thank you. Thank you very much, Mr. Muir. You're not on the brief, Mr. Muir. Am I wrong? No, he's on the brief. Oh, you are. I hope I'm at the top of the brief. Yeah. Okay. Oh, no. That's because I have a long brief. Okay. Thanks. Judge Slaughter, the site of the case – Oh, thank you. – that permits you to give guidance, if you choose. I hope you do. Yeah. It is Douglas v. Owens, 50 F3rd 1226, 3rd Circuit, New York. Hold it. 50 F3rd 1226. That's Judge Nygaard's case? Oh, I'm sorry. It's Judge Cowan. Oh, okay. Because you did – Nygaard – You did say Cowan, and I lied before. I agree. I apologize. Okay. Judge Nygaard and – They're both senior judges. We listened to both of them. Okay. Both of my colleagues are. The other point I want to make is Mr. Mueller said that the Reich case in the 10th Circuit is still good law. The position is it's been overruled. I'd like to cite you to the Garcia decision, which is a district court decision in the 10th Circuit recent – this year, which expressly states that it will not follow the Reich decision because the Reich decision has been effectively overruled by Alvarez, to pick up on Judge Alvarez's point. When Alvarez came out and said exertion is not necessary, even courts in the 10th Circuit, district courts, are not following the Reich 10th Circuit Court of Appeals decision. Okay. So you want to give us that district court opinion? The cite to that is, and it's a Westlaw cite, 2007, WL1299199. The district of Kansas. And what's the name of that? It's Garcia v. Tyson Foods. What the hell? That came down May 2nd, 2007. Absolutely, Your Honor. The other point I want to make is that in terms of the equipment, the clothing, Mr.         Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Alright. Alright. Alright. He's ...  He's good?  Alright.      Nah, nah.  Okay. You okay?   Alright.   You, you, next one. You want to go first or ... Oh, I'm pulling it in. Oh, I was pulling it in. You going to listen to it? Whether, whatever. You let it turn. Did you ask for the instruction that the district court didn't give? Refused to give it. We did ask for ... Yes. We asked for the integral and dispensable instruction to be given. I might add, Judge Aviser, if something is integral and dispensable and required, it certainly necessarily constitutes work, even under a tenancy code. Finally, in terms of the, what was undisputed, as to whether the government regulations or Tyson required these items, I point you to Joint Appendix 2476. This was a stipulation of undisputed facts, which was read to the jury. Number four states, pursuant to government regulations and corporate or local policy and practice, Tyson requires production employees at its New Holland facilities to wear certain safety and sanitary clothing and engage in certain washing activities. Your Honor, the case is undisputed on the key points that constitute work in this case. We did move for judgment as a matter of law, by the way, on that issue, because we would have preferred to have gotten right to the heart of it, not play the semantics on that definition and find out, is it integral and dispensable? Judge Kelly had the clear belief that you need exertion of a cumbersome nature. He denied our judgment as a matter of law request and wanted those questions to be answered by the court. That's the crucial... By the jury. By the jury. Not the court, yeah. That is the crucial error in this case, and that is why we submit we must have a remand. However, we do suggest that you, this Third Circuit, could determine as a matter of law, given the undisputed fact that I just read, that the work element has been proven here. If they want to raise the other issues, it's only them. Okay, thank you very much. We will take this case under advisement. Because Judge Aldisert is communicating with us on the video, we have to do our conferencing in the courtroom, which means that I have to ask everybody in the courtroom to please leave because we're going to lock the doors and have our conferencing, which we usually do in chambers, but we can't do it now in chambers. We thank you all for the time that you put in. We thank the audience for its interest, and that means law clerks too. But, Jerry, you can take some of this stuff back. This court stands adjourned until Wednesday, July 25, 2007 at 10 a.m. Thank you.